IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY COLLINS, NAIMATULLAH NAYZEE and ANN MURRAY, for themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 3:17-cv-00312 |
| NPC, INTERNATIONAL, Inc., | ) ) ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS OR, ALTERNATIVELY, TO STAY PROCEEDINGS PENDING THE SUPREME COURT'S DECISION IN *LEWIS V. EPIC SYSTEMS CORPORATION***

Defendant NPC, International, Inc. ("NPC") submits this memorandum in support of its Motion to Compel Individual Arbitration of Plaintiffs' claims and stay these proceedings pursuant to Fed. R. Civ. P. 7(b) and 9 U.S.C. §§ 3-4. Alternatively, NPC moves to immediately stay all further proceedings until the United States Supreme Court decides the underlying controlling issue of law in *Lewis v. Epic Systems, Corp.* 823 F.3d 1147 (7th Cir. 2016), *cert granted*, 85 U.S.L.W. 3343 (U.S. Jan. 13, 2017) (No. 16-285)[1].

This case should proceed to arbitration. The Federal Arbitration Act ("FAA") requires the parties to arbitrate Plaintiffs' claims. All three named Plaintiffs signed a valid and enforceable Arbitration Agreement, requiring that their claims in this case proceed as individual causes of action. Specifically, Plaintiffs' unpaid wage claims under the FLSA and related state laws fall within the scope of the Arbitration Agreement. Accordingly, the Court should grant NPC's Motion and compel individual arbitration of Plaintiffs' claims. Alternatively, in line with

---

[1] Consolidated with *Ernst & Young LLP v. Morris*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 85 U.S.L.W. 3344 (U.S. Jan. 13, 2017) (No. 16-300) and *NLRB v. Murphy Oil U.S.A, Inc.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, 85 U.S.L.W. 3344 (U.S. Jan. 13, 2017) (No. 16-307)

other federal courts around the country, this Court should immediately stay all proceedings until the Supreme Court decides the legality of Plaintiffs' class action waivers, an issue already accepted for review. *See Reiderer v. United Healthcare Services, Inc.* 2016 U.S. Dist. LEXIS 183880 (E.D. Wis. Sept. 13, 2016); *Rittman v. Amazon.com, Inc.*, 2017 US Dist. Lexis 41780 (W.D. Wa. Mar. 22, 2017); *McElrath v. Uber Technologies, Inc.*, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017); *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. Lexis 173022 (C.D. Cal. Dec. 14, 2016).

## BACKGROUND

NPC operates Pizza Hut restaurant franchises. Plaintiff Collins works at a Pizza Hut store in Illinois. (Compl, ¶ 10). Plaintiff Nayazee works at a Pizza Hut store in Missouri. (Compl, ¶ 11). Plaintiff Murray works at a Pizza Hut store in Florida. (Compl, ¶ 12). On March 24, 2017, Plaintiffs filed their Complaint alleging unpaid wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. § 105/1 *et seq*. ("IMWL"), the Illinois Wage Payment and Collection Act., 820 Ill. Comp Stat. Ann. § 115/3 *et seq*. ("IWPCA"), the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq*. ("MMWL"), and the Florida Constitution, Fla Const., Art. X, § 24.

Plaintiffs each viewed and signed off on the attached Agreements to Arbitrate ("Arbitration Agreement or "Agreement"). (Exhibit 1 at ¶¶8, 10-11, 13-14, 16-17; *see* Arbitration Agreements, attached as Exhibits 1-A, C, E). Plaintiff Collins electronically signed the Arbitration Agreement on October 24, 2014. (Exhibit 1 at ¶ 10, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-B). Plaintiff Nayazee electronically signed the Arbitration Agreement on December 3, 2014. (Exhibit 1 at ¶ 13, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-D). Plaintiff Murray electronically signed the

Arbitration Agreement on September 30, 2015. (Exhibit 1 at ¶ 16, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-F).

> The Agreements to Arbitrate state, in part:
>
> NPC International Inc. on behalf of itself and its parents and affiliates, officers and directors (collectively, "NPC") and I agree to use confidential binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against NPC and/or their current or former employees or (b) that NPC may have against me. Without limitation, such claims include any concerning wages, expense reimbursement, compensation….
> …
> In any arbitration, the American Arbitration Association ("AAA") will administer the arbitration, and the then prevailing employment dispute resolution rules of the AAA will govern, except that… as discussed below, the arbitration shall occur only as an individual action and not as a class, collective, representative, or consolidated action.
> …
> NPC and I agree that any and all claim subject to arbitration under this Agreement to Arbitrate may be instituted and arbitrated only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action (collectively referred to in this Agreement to Arbitrate as a "Class Action"). Furthermore, NPC and I agree that neither party can initiate a Class Action in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. Moreover, neither party can join a Class Action or participate as a member of a Class Action instituted by someone else in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. It is the parties' intent to the fullest extent permitted by law to waive any and all rights to the application of Class Action procedures or remedies with respect to all claims subject to this Agreement to Arbitrate. It is expressly agreed between NPC and me that any arbitrator adjudicating claims under this Agreement to Arbitrate shall have no power or authority to adjudicate Class Action claims and proceedings. The waiver of Class Action claims and proceedings is an essential and material term of this Agreement to Arbitrate, and NPC and I agree that if it is determined by a court of competent jurisdiction that it is prohibited or invalid under applicable law, then this entire Agreement to Arbitrate is held to be unenforceable. Otherwise, if any other provision of this Agreement to Arbitrate is held to be unenforceable by a court of competent jurisdiction, such provision shall be deemed voided, however, all remaining provisions of the Agreement to Arbitrate shall remain in full force and effect.
>
> All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the

> validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide.
>
> I acknowledge and agree that this Agreement to Arbitrate is made in exchange for my employment or continued employment, as well as the mutual promises to resolve disputes through arbitration contained in this Agreement….

When Plaintiffs electronically signed the Agreements, they acknowledged that "I understand that, by entering into this Agreement to Arbitrate, I am waiving my right to a jury trial and any right I may have to bring any employment-related claim covered by this agreement as a Class Action (as defined herein) or any class or representative action (either in court or in arbitration) or to participate in such an action," language that appears in bold print directly above the signature line. (*See* Exhibits 1-A, at p. 2; 1-C, at p. 2; 1-E, at p. 2).

## LAW AND ARGUMENT

### A.  The FAA Requires Arbitration of Plaintiffs' Claims.

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Thus, the FAA places arbitration agreements "upon the same footing as other contracts."  *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (citation omitted).  The FAA "declare[s] a national policy favoring arbitration."  *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

"Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted). The Supreme Court has held that class-action waivers in FAA-governed arbitration agreements are enforceable. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), the Court considered whether the FAA preempted California state law prohibiting class-action waivers. The Court observed, "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.

### B. The Plaintiffs Are Bound by Valid Agreements to Arbitrate.

The FAA mandates that arbitration agreements are to be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that state law governs the interpretation of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011). The party seeking to avoid arbitration bears the burden of establishing these "generally applicable contract defenses." *See Randolph*, 531 U.S. at 91. "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

### 1. Plaintiff Murray Formed a Valid Agreement Under Florida Law.

Florida law applies to Plaintiff Murray's Agreement, because it was executed in Florida, Murray's claims arose in Florida, and the Agreement does not include a contrary choice-of-law provision. *See Bhim v Rent-A-Ctr., Inc.*, 655 F.Supp.2d 1307. 1311 (S.D. Fla. 2009). Under Florida law, an enforceable contract requires an offer, acceptance, consideration, and sufficient specification of the essential terms. *West Const., Inc, v. Florida Backtop, Inc*., 88 So.3d 301, 304 (Fla. Dist. Ct. App. 2012).

As to acceptance, signing a document indicates assent to the terms of an agreement. *Jones v. Sallie Mae, Inc*., 2013 WL 6283483, at *5 (M.D. Fla. 2013) (applying Florida law). Under Florida law, "an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." Fla. Stat. § 668.004. [2] Mutually binding promises to arbitrate constitute valid consideration for both parties, and give rise to arbitration agreements. "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier*, 902 So.2d 307, 309 (Fla. Dist. Ct. App. 2005).

Here, Plaintiff Murray formed a valid agreement under Florida law. NPC offered to continue Plaintiff's employment and resolve its claims against Plaintiff through arbitration in exchange for her promise to do the same with legal claims against it. Plaintiff accepted the offer by electronically acknowledging the agreement on September 30, 2015. (Exhibit 1, at ¶16). The Agreement also covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims and time period covered, and the rights retained by the parties.

---

[2] The Electronic Signatures in Global and National Commerce Act (the "E-Sign Act") states that "a contract relating to [interstate commerce] may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a)(2).

### 2. Plaintiff Murray's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.

a. <u>The Plain Language of the Agreement Covers Wage Claims.</u>

The Arbitration Agreement requires Plaintiff Murray to arbitrate any claims arising between herself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-C, p. 1) Because Murray has sued under the FLSA and Florida state law to recover unpaid wages, her claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, p. 3).

b. <u>The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.</u>

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, Plaintiff agreed to bring any and all claims "only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action." The Eleventh Circuit, where Plaintiff Murray entered into the agreement and where her claims arose, has specifically held arbitration agreements containing class waivers are enforceable in FLSA cases. *Caley v. Gulfsteram Aerospace Corp.*, 428 F.d 1359, 1378 (11th Cir. 2005). ("As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of the arbitration's ability to offer 'simplicity, informality, and expedition.'") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 S. Ct. 1647, 1655, 114 L.Ed. 2d 26 (U.S. 1991)). In fact, the United States District Court for the Middle District of Florida recently enforced an *identical arbitration agreement* compelling a former

NPC Pizza Hut employee to individually arbitrate his FLSA overtime and minimum wage claims. *See Gregorius v. NPC Int'l, Inc*., Case No. 2:16-cv-593 (M.D. Fla. November 30, 2016).

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Moreover, the parties' Agreement even specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

In sum, Plaintiff Murray entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

### 3. Plaintiff Naimatullah Nyazee Formed a Valid Agreement Under Missouri Law.

Missouri law applies to Plaintiff Nyazee's Agreement, because it was executed in Missouri, Nyazee's claims arose in Missouri, and the Agreement does not include a contrary choice-of law-provision. A contract is enforceable under Missouri law if there is an offer, an acceptance, and bargained for consideration. *Thacker v. Massman Construction Co.*, 247 S.W.2d 623, 629 (Mo. 1952). An employee and employer's mutual promise to arbitrate constitutes sufficient consideration if that promise is binding upon both sides. *Colton v. Hibbet Sporting Goods, Inc*., 2016 U.S. Dist. Lexis 76388 (W.D. Mo. June 13, 2016) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. banc 2014)). A promise is binding rather than illusory if neither party retains the unilateral ability to avoid its contractual obligations. *Id*. at *6.

Plaintiff Nayazee formed a valid agreement under Missouri law. NPC offered to resolve its claims against Plaintiff through arbitration (with NPC paying the arbitrator fee and the portion of the arbitration filing fee that is in excess of a similar court filing fee) in exchange for his promise to do the same with legal claims against it and neither party retained the ability to unilaterally avoid its contractual obligations. Plaintiff accepted the offer by electronically acknowledging the agreement on December 3, 2014. (Exhibit 1, at ¶13).

### 4. Plaintiff Nyazee's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.

a. <u>The Plain Language of the Agreement Covers Wage Claims.</u>

The Arbitration Agreement requires Plaintiff Nyazee to arbitrate any claims arising between himself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-B, p. 1) Because Nyazee has sued under the FLSA and Missouri state law to recover unpaid wages, his claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, pp 2- 3).

b. <u>The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.</u>

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, the Agreement is clear that Plaintiff agreed to bring any and all claims "only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action." The Eighth Circuit, where Plaintiff Nyazee entered into the agreement and where his claims arose, has specifically held arbitration agreements

containing class waivers are enforceable in FLSA cases. *Cellular Sales of Missouri, LLC v. NLRB*, 824 F.3d 772 (8th Cir. 2016). In a case involving the same Plaintiffs' counsel as here, the United States District Court for the Western District of Missouri previously compelled a former NPC Pizza Hut delivery driver to individually arbitrate his state law minimum wage claims where he did not agree to authorize class arbitration. *See Houston v. NPC, Int., Inc.*, 2014 Dist. Lexis 185002 (March 24, 2014).

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Moreover, the parties' Agreement even specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

In sum, Plaintiff Nyazee entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

### 5. Plaintiff Collins Formed a Valid Agreement Under Illinois Law.

Illinois law applies to Plaintiff Collins' Agreement, because it was executed in Illinois, Collins' claims arose in Illinois, and the Agreement does not include a contrary choice-of-law provision. According to Illinois law, an arbitration agreement is enforceable where there is an offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26, 830 N.E.2d 619, 624, 294 Ill. Dec. 207 (2005).

Here, Plaintiff Collins formed a valid agreement under Illinois law. NPC offered to continue Plaintiff's employment *and* resolve its claims against Plaintiff through arbitration in exchange for his promise to do the same with legal claims against it (with NPC also paying the Arbitrator fee and the portion of the arbitration filing fee that is in excess of a similar court filing fee). Plaintiff accepted the offer by electronically acknowledging the agreement. *See Scroggins v. Uber Techs*, 2017 Dist. Lexis 10815 (January 26, 2017) (finding acceptance of arbitration agreement by employee's electronic confirmation through the employer's digital portal). The Agreement also covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims and time period covered, and the rights retained by the parties.

### 6. Plaintiff Collin's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.

a. <u>The Plain Language of the Agreement Covers Wage Claims.</u>

The Arbitration Agreement requires Plaintiff Collins to arbitrate any claims arising between himself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-A, p. 1) Because Collins has sued under the FLSA and Illinois state law to recover unpaid wages, his claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, p. 2).

b. <u>The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.</u>

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, the Agreement is clear that Plaintiff agreed to bring any and all claims "only in an

individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action." While the Seventh Circuit has ruled that mandatory class waivers are unenforceable in certain FLSA cases,[3] individual arbitration should still be compelled where the agreement was not a mandatory condition of employment. *See Scroggins v. Uber Technologies, Inc.,* 2017 U.S. Dist. Lexis 10815 (S.D. Ind. January 26, 2017) (compelling individual arbitration where employee was able to opt-out of arbitration provision, including class waiver). In *Lewis*, it was "undisputed that assent to Epic's arbitration provision was a condition of continued employment." *Id*. at *6. The Seventh Circuit expressly declined to decide the effect of an option to opt-out or decline the agreement. *Id*. In other words, employers who have allowed employees to decline or opt-out of individual arbitration agreements and keep their jobs *can* compel individual arbitration. Here, Plaintiff Collins had been employed by NPC for approximately five years when NPC offered him the arbitration agreement with the class waiver. (*See* Exhibit 1, ¶ 9). Collins viewed it and electronically signed it on October 24, 2014. (*Id*. at ¶ 10). Collins was not forced to sign the agreement to keep his job and could have elected *not* to sign the agreement like other NPC employees have. (*Id.*, ¶ 17). *Lewis* is thus distinguishable.

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Here, the parties' Agreement also specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

---

[3] *See Lewis v. Epic Systems Corp.,* 823 F. 3d 1147 (7th Cir. 2016), *cert granted*, 85 U.S.L.W. 3343 (U.S. Jan. 13, 2017).

In sum, Plaintiff Collins entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

C. **Alternatively, the Court Should Immediately Stay Further Proceedings Pending the Supreme Court's Decision in *Lewis v. Epic Systems, Inc*.**

Since the Arbitration Agreements governing Plaintiffs' claims mandate individual arbitration of their disputes, the Court should stay these proceedings according to the FAA and issue an order directing the parties to proceed with arbitration of Plaintiffs' individual claims. 9 U.S.C. § 3.

Alternatively, this Court should immediately stay all proceedings, as other courts have recently done, until the Supreme Court decides the legality of Plaintiffs' class action waivers. *See e.g., Reiderer v. United Healthcare Services, Inc.* 2016 U.S. Dist. LEXIS 183880 (E.D. Wis. Sept. 13, 2016); *McElrath v. Uber Technologies, Inc*., 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017); *Rittman v. Amazon.com, Inc.*, 2017 US Dist. Lexis 41780 (W.D. Wa. Mar. 22, 2017); *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. Lexis 173022 (C.D. Cal. Dec. 14, 2016).

As background, the Second, Fifth and Eighth Circuits[4] have all decided that employee arbitration agreements containing class waivers are enforceable, as have many federal district courts. However, recently, the Seventh and Ninth Circuits have not enforced certain agreements containing class action waivers on the grounds they interfere with employees' rights to engage in concerted activity under the NLRA. *See Lewis v. Epic Systems Corp.,* 823 F. 3d 1147 (7th Cir. 2016); *Morris v. Ernst & Young, LLP*, 834 F. 3d 975 (9th Cir. 2016). Recognizing the circuit split on this crucial issue, the Supreme Court consolidated appeals pending in the Fifth, Seventh

---

[4] *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013); *NLRB v. Murphy Oil USA*, Inc., 808 F.3d 1013 (5th Cir. 2015); *Cellular Sales of Missouri, LLC v. NLRB*, 824 F.3d 772 (8th Cir. 2016).

and Ninth Circuits on January 13, 2017, to review whether arbitration agreements containing class action waivers are enforceable under the Federal Arbitration Act.[5] Consequently, courts have been staying proceedings in advance of the Supreme Court's decision on this issue.

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Bradley v. L'Oréal USA, Inc.*, 2010 U.S. Dist. Lexis 89242 at *2-3 (S.D. Ill. Aug. 30, 2010) (quoting *Walker v. Merck & Co., Inc.*, No. 05-cv-360-DRH, 2005 U.S. Dist. LEXIS 13693, 2005 WL 1565839 at *2 (S.D. Ill. June 22, 2005) (Hendon, J.) (citing *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936))). "In considering a motion for stay, courts consider both the interest of judicial economy and the potential prejudice or hardship to the parties." *Id.* (citation omitted). "A district court may stay proceedings even where subject matter is uncertain." *Id*. However, the stay should not be for one of "indefinite duration" absent a pressing need. *Id*. (citing *Landis*, 299 U.S. at 255).

Because the United States Supreme Court *will* be evaluating class waivers in employee arbitration agreements, an immediate stay will simplify the issues in question and streamline the proceedings and thus reduce the burden of litigation on this court. Whether NPC's arbitration agreements are valid, turns squarely on the outcome of the Supreme Court's review of *Lewis*. A stay will prevent considerable waste and preserve both the Court's and the Parties' resources in briefing, arguing and determining pending and future motions. Indeed, Plaintiffs have already filed a motion for conditional certification under the FLSA and have requested to send notice to a

---

[5] *Lewis v. Epic Systems Corp.,* 823 F. 3d 1147 (7th Cir. 2016), *cert granted*, 85 U.S.L.W. 3343 (U.S. Jan. 13, 2017) (No. 16-285; *Ernst & Young LLP v. Morris*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 85 U.S.L.W. 3344 (U.S. Jan. 13, 2017) (No. 16-300) and *NLRB v. Murphy Oil U.S.A, Inc.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, 85 U.S.L.W. 3344 (U.S. Jan. 13, 2017) (No. 16-307).

nationwide putative class of nearly 50,000 individuals. (*See* DE #18-19; Exhibit 1, ¶ 18. NPC will vigorously oppose the motion and its response is currently due on May 4, 2017.

A stay will not prejudice Plaintiffs or the putative class. This case is still in the earliest stages of litigation. In fact, there is no scheduling order entered, yet. The stay would not be of an indefinite duration, either, as the stay would only be until a decision is rendered by the Supreme Court on a case it has already accepted for review. Staying all proceedings would be in line with what other federal courts have recently done. *See e.g., Reiderer v. United Healthcare Services, Inc.* 2016 U.S. Dist. LEXIS 183880 (E.D. Wis. Sept. 13, 2016) (granting employer's motion to stay pending outcome in *Lewis v. Epic*); *Rittman v. Amazon.com, Inc.*, 2017 US Dist. Lexis 41780 (W.D. Wa. Mar. 22, 2017) (granting employer's motion to stay proceedings pending Supreme Court's decision in *Lewis v. Epic*); *McElrath v. Uber Technologies, Inc.*, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) (granting stay because "whether this case can proceed as a class action turns squarely on the outcome of the Supreme Court's review of *Morris*); *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. Lexis 173022 (C.D. Cal. Dec. 14, 2016) (granting motion to stay pending Supreme Court's potential resolution of legal issue in *Morris v. Ernst & Young*). Notably, after the Supreme Court agreed to hear *Lewis*, the district court, over plaintiffs' objections, stayed all proceedings on February 7, 2017. Class certification motions were approaching and the district court rightly acknowledged that "if the Supreme Court agrees with defendant, this case will be dismissed and any resources the parties expend on those motions will be wasted." *Lewis v. Epic Systems Corporation*, 2017 U.S. Dist. Lexis 17624 (W.D. Wis. Feb. 8, 2017).

Given that the Supreme Court will soon provide answers regarding the validity of class waivers, such as those squarely at issue in this case, the Court should grant a stay of all proceedings in the interests of judicial economy and justice.

Dated: May 1, 2017

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Andrew M. Meerkins
  Andrew Meerkins
  SHOOK, HARDY & BACON L.L.P.
  111 South Wacker Drive
  Suite 5100
  Chicago, Illinois 60606
  Telephone: (312) 704-7700
  ameerkins@shb.com

  Mark Tatum
  Katherine Sinatra
  SHOOK, HARDY & BACON L.L.P.
  2555 Grand Boulevard
  Kansas City, MO 64108
  Telephone: (816) 474-6550
  mtatum@shb.com
  ksinatra@shb.com

  Counsel for Defendant
  NPC International, Inc.

## **CERTIFICATE OF SERVICE**

      I certify that on May 1, 2017, I served the foregoing document on the following Plaintiffs' counsel by e-mail service through the Court's ECF system:

    Jeremiah L. Frei-Pearson
    Chantal Khalil
    Todd S. Garber
    **Finklestein, Blankinship, Frei-Pearson & Garber LLP**
    445 Hamilton Ave., Ste. 605
    White Plains, NY 10601


                                      /s/ Andrew M. Meerkins
                                      Attorney for Defendant

8138151