IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TONY COLLINS, NAIMATULLAH NAYZEE and ANN MURRAY, for themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 3:17-cv-00312<br>) |
| NPC, INTERNATIONAL, Inc., | )<br>) |
| Defendant. | )<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS OR,
ALTERNATIVELY, TO STAY PROCEEDINGS PENDING THE SUPREME COURT'S
DECISION IN *LEWIS V. EPIC SYSTEMS CORPORATION***

Plaintiffs incorrectly claim this Court must proceed with a nationwide, mass action because Seventh Circuit law condemns NPC's Arbitration Agreement. On the contrary, the following facts justify: (1) compelling individual arbitration, or (2) staying proceedings:

- The Arbitration Agreements Plaintiffs signed were *not mandatory*;

- The Arbitration Agreements Plaintiffs signed were made in exchange for mutual promises to resolve disputes through arbitration;

- The United States Supreme Court's decision in *Lewis v. Epic Systems Corporation* may alter the entire course of this action; and

- Staying proceedings until the Supreme Court's decision on class action waivers is an acceptable alternative taken by other courts.

## I. *Wass v. NPC* Was A Very Different Case With No Relevance Here.

Despite their counsel never being involved with the case, Plaintiffs' Opposition speculates considerably about *Wass v. NPC International, Inc.*—an inapposite case filed eight years ago. Case No. 2:09-cv-02254-JWL-KGS, Doc. No. 1 (D. Kan. May 12, 2009). Unlike here, *Wass* did not involve arbitration agreements or class waiver issues. *Wass* was *conditionally* certified as a collective action under the FLSA, but never certified under Rule 23. *See id.*, Doc. 162 (order granting motion for conditional certification). The case settled before the final certification phase and dispositive motions were never decided. And the actual driver reimbursement program in *Wass* was different from the one before this Court. As just one example, NPC currently tracks and reimburses drivers for *actual miles driven*, while it used to reimburse based on estimated miles. (*See* Declaration of Vonnie Walbert attached hereto at Exhibit 1, ¶ 5). *Wass* settled with no finding or admission of liability, despite Plaintiffs' contrary and misleading innuendos (P. Opp., at p. 4). This Court ought to ignore all references to *Wass*.

## II. This Court Can Compel Individual Arbitration Under *Lewis v. Epic Systems Corp.*

Plaintiffs wrongly suggest that *Lewis v. Epic Systems* "unambiguously" held that waivers of class and collective actions are illegal and therefore unenforceable. (Pl. Opp. at 6). It does not. In *Lewis,* the employer emailed an arbitration agreement to its employees that waived collective-action rights. Employees were deemed to have accepted the agreement if they continued working. *Lewis v. Epic Systems Corp*., 823 F.3d 1147 (7th Cir. 2016) *cert granted*, 85 U.S.L.W. 3343 (Jan. 13, 2017).

The key factor in *Lewis* was compulsion. Illustrating this point, another court in the Seventh Circuit recently compelled individual arbitration of wage claims where the class waiver was *not* mandatory. *Price v. Uber Technologies, Inc*., 2017 WL 2378280 at *3 (S.D. Ind. June 1, 2017). The court explained why this was acceptable under *Lewis*:

> **[E]mployees in *Lewis* had no option to decline** or 'opt-out' of the agreement if they wanted to keep their jobs. *Lewis*, 823 F.3d at 1151. The Seventh Circuit expressly declined in *Lewis* to decide the effect of an opt-out clause, such as the one in this case, on the enforceability of a class action waiver. The Court stated, 'We have no need to resolve these differences today, however, because in our case, **it is undisputed that assent to Epic's arbitration provision was a condition of continued employment**. A contract that limits Section 7 rights that is agreed to as a condition of continued employment qualifies as 'interfer[ing] with' or 'restrain[ing] . . . employees in the exercise' of those rights.'

*Id.* at *2–3. (emphasis added). Similarly, on May 31, 2017, a New Jersey district court compelled individual arbitration, expressly distinguishing *Lewis* because the parties' agreement to arbitrate was optional. *See Cavallo v. Uber Techs., Inc.*, 2017 WL 2362851, at *8 ("arbitration agreement does not violate the NLRA because arbitration was not mandatory").

There was no compulsion here. NPC offered the Arbitration Agreement for electronic view and sign-off on October 1, 2014. (*See* Dkt. 41-1, ¶ 8). Each Plaintiff individually signed into NPC's electronic SAP system, viewed the Agreement, and electronically signed it. (*Id*. at ¶¶

2

8–17). They could have elected not to, like other NPC deliver drivers, who remain employed by NPC despite not signing arbitration agreements. (*Id*. at ¶ 17; Ex. 1, ¶ 3). NPC does not terminate delivery drivers for not signing NPC's Arbitration Agreement. (*See* Ex. 1, ¶ 4). This belies Plaintiffs' claims that they and the putative class "were forced to sign in order to keep their jobs." (Pl. Opp. at 9). Plaintiffs try to distinguish NPC's Arbitration Agreement from the many blessed since *Lewis* because it does not contain an "opt-out" clause. But this omission does not alter voluntariness—NPC's employees "opt-out" by never signing in the first place.

Lastly, Plaintiffs' omit material language from NPC's Arbitration Agreement. The Agreement states that it is made "in exchange for … the mutual promises to resolve disputes through arbitration contained in this Agreement." (See Dkt. 41-2, p. 2). This mutual promise to arbitrate is valid consideration not linked to continued employment. (*See* Def. Mem., at p. 8).

### III.     A Stay Remains Appropriate Under the Circumstances.

NPC and the Court will waste substantial energy and resources without a stay. But Plaintiffs lose little, if anything, with a stay order.

#### A.     Plaintiffs Are Not Harmed By a Stay.

NPC's reimbursement policy for delivery drivers is not "unlawful." Plaintiffs *allege* it is, but NPC denies it. Plaintiffs may claim they are "suffering under an unlawfully low wage" and "direct financial harm every day this suit is prolonged." (See Pl. Opp., at 10). NPC sees it differently, and, in any case, Plaintiff or any putative class member could arbitrate their claims at any time with NPC paying the arbitrator's expense. In other words, all Plaintiffs really seek is the ability to seek collective action now before the Supreme Court rules on the pending and decisive issues in *Lewis*.

The only conceivable harm a putative class member could face is the running of the FLSA's statute of limitations. Plaintiffs' correctly note that the three-year maximum recovery

period tolls upon filing written consent to sue. However, Plaintiffs have filed consent already, as have 22 purported opt-ins. Thus, a stay will harm no one who has expressed interest in this case. The only potential harm is to potential putative class members (assuming this case were to be conditionally certified, which NPC will oppose), and that could easily be eliminated by the Court's tolling of the FLSA's statute of limitations during the length of the stay. Courts do this routinely. *See, e.g., Perry v. National City Mortgage*, 2007 WL 2122417 (S.D. Ill. 2007); *Cureless v. Great American Real Fast Foot, Inc.*, 280 F.R.D. 429 (S.D. Ill. 2008).

### B. A Stay is Necessary to Preserve Judicial and Party Resources Because the *Lewis* Decision May Alter the Entire Course of this Case.

Plaintiffs cannot deny that the Supreme Court's decision in *Lewis* may fundamentally alter this litigation. Until *Lewis*, the *majority* of circuits held that an employer *can* require an employee to arbitrate disputes on an individual basis and employees could waive the right to engage in a class-action lawsuit.[1] Should the Supreme Court agree with the pre-*Lewis* majority, Plaintiffs will be ordered to individual arbitration and this action will effectively end. Thus, a stay is necessary to preserve the Court's and the parties' resources.

Plaintiffs' argue that "a stay will not meaningfully reduce the burden of litigation on the parties or the Court." (P. Opp. at p. 15) But such claims overlook that NPC will actively oppose conditional certification and discovery will be necessary to do so. Plaintiffs' Motion for

---

[1] *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.6 (2d Cir. 2013) ("We have previously explained that the procedural 'right' to proceed collectively [under the NLRA] presupposes, and does not create, a non-waivable, substantive right to bring such a claim.") (internal citation omitted); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2013) ("[W]e conclude that [the defendant] did not violate section 8(a)(1) [of the NLRA] by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes."); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 361 (5th Cir. 2015) ("We know that the right to proceed collectively cannot protect vindication of employees' statutory rights . . . because a substantive right to proceed collectively has been foreclosed by prior [Supreme Court] decisions.").

4

Conditional Certification includes various attachments, declarations, and arguments regarding certification of a putative class of nearly 50,000 individuals, which NPC must investigate and has the right to challenge. Even if Plaintiffs convinced the Court that conditional certification were appropriate, it is very unlikely the Court could issue any collective action notice to the putative class until after the Supreme Court decides *Lewis*. If the Court overrules the Seventh Circuit, many hours will have been expended for naught.

      C.      **The Weight of Reasoned Judicial Opinions Favors a Stay.**

Contrary to Plaintiffs' suggestion, the weight of reasoned orders from other district courts favors a stay while the Supreme Court considers *Lewis*. As presented in NPC's Memorandum in Support, numerous cases have stayed proceedings to await the Supreme Court's decision. (*See* Def. Mem. p. 13).

In an attempt to rebut this compelling authority, Plaintiffs argue that a stay is not permitted as "this Court is bound by Seventh Circuit precedent unless and until it is overturned by Congress, the Seventh Circuit, or the Supreme Court." (P. Opp. at 19). But Plaintiffs again ignore the actual findings in *Lewis*. NPC is not asking the Court to reject Seventh Circuit precedent. NPC is asking the Court to understand the actual holding in *Lewis*, which invalidated "mandatory" waivers of class claims in order to remain employed. NPC is alternatively asking the Court to simply be pragmatic and do what others in this circuit and elsewhere have done: wait to see how the United States Supreme Court resolves this issue. A stay is without a doubt the prudent alternative.

WHEREFORE, for the reasons set forth above, NPC requests that the Court grant its Motion to Compel Individual Arbitration and Stay Proceedings or, Alternatively, Stay Proceedings Pending the Supreme Court's Decision in *Lewis v. Epic Systems Corporation.*

Dated: June 14, 2017

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ *Andrew M. Meerkins*
Andrew Meerkins
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
Telephone: (312) 704-7700
ameerkins@shb.com

Mark Tatum
Katherine Sinatra
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
mtatum@shb.com
ksinatra@shb.com

Counsel for Defendant
NPC International, Inc.

8227855

# CERTIFICATE OF SERVICE

      I certify that on June 14, 2017, I served the foregoing document on the following Plaintiffs' counsel by e-mail service through the Court's ECF system:

Jeremiah L. Frei-Pearson
Chantal Khalil
Todd S. Garber
**Finklestein, Blankinship, Frei-Pearson & Garber LLP**
445 Hamilton Ave., Ste. 605
White Plains, NY 10601


                                              /s/ *Andrew M. Meerkins*
                                              Attorney for Defendant