# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TONY COLLINS, NAIMATULLAH NAYZEE and ANN MURRAY, for themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-cv-00312 |
| NPC, INTERNATIONAL, Inc., | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS

Defendant NPC, International, Inc. ("NPC") submits this memorandum in support of its Renewed Motion to Compel Individual Arbitration of Plaintiffs' claims and stay these proceedings pursuant to Fed. R. Civ. P. 7(b) and 9 U.S.C. §§ 3-4. NPC originally moved to compel individual arbitration and stay proceedings or, alternatively, to stay proceedings pending the Supreme Court's decision in *Lewis v. Epic Systems Corporation* on May 1, 2017. (Doc. # 40). The Court stayed this case pending the Supreme Court's ruling and denied NPC's motion to compel individual arbitration *without prejudice* to refile once the Supreme Court issued its opinion. (Doc. # 87). On May 24, 2018, after the Supreme Court issued its opinion in *Lewis*, the Court lifted the stay and invited the parties to refile their previously denied motions as appropriate. (Doc. # 89).

This case should proceed to arbitration. The Federal Arbitration Act ("FAA") requires the parties to arbitrate Plaintiffs' claims. All three named Plaintiffs signed a valid and enforceable Arbitration Agreement, requiring that their claims in this case proceed as individual causes of action. Specifically, Plaintiffs' unpaid wage claims under the FLSA and related state laws fall

8780502

within the scope of the Arbitration Agreement. Accordingly, the Court should grant NPC's Motion and compel individual arbitration of Plaintiffs' claims.

## BACKGROUND

NPC operates Pizza Hut restaurant franchises. Named Plaintiff Collins works at a Pizza Hut store in Illinois. (Compl, ¶ 10). Plaintiff Nayazee works at a Pizza Hut store in Missouri. (Compl, ¶ 11). Plaintiff Murray works at a Pizza Hut store in Florida. (Compl, ¶ 12). On March 24, 2017, Plaintiffs filed their Complaint alleging unpaid wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. § 105/1 *et seq*. ("IMWL"), the Illinois Wage Payment and Collection Act., 820 Ill. Comp Stat. Ann. § 115/3 *et seq*. ("IWPCA"), the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et seq*. ("MMWL"), and the Florida Constitution, Fla Const., Art. X, § 24.

Plaintiffs each viewed and signed off on the attached Agreements to Arbitrate ("Arbitration Agreement or "Agreement"). (Exhibit 1 at ¶¶ 8, 10-11, 13-14, 16; *see* Arbitration Agreements, attached as Exhibits 1-A, C, E). Plaintiff Collins electronically signed the Arbitration Agreement on October 24, 2014. (Exhibit 1 at ¶ 10, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-B). Plaintiff Nayazee electronically signed the Arbitration Agreement on December 3, 2014. (Exhibit 1 at ¶ 13, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-D). Plaintiff Murray electronically signed the Arbitration Agreement on September 30, 2015. (Exhibit 1 at ¶ 16, *see* Plaintiff's acknowledgement in SAP, attached as Exhibit 1-F).

The Agreements to Arbitrate state, in part:

> NPC International Inc. on behalf of itself and its parents and affiliates, officers and directors (collectively, "NPC") and I agree to use confidential binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against NPC and/or their current or former employees or (b) that NPC may have against me. Without

limitation, such claims include any concerning wages, expense reimbursement, compensation….

…

In any arbitration, the American Arbitration Association ("AAA") will administer the arbitration, and the then prevailing employment dispute resolution rules of the AAA will govern, except that… as discussed below, the arbitration shall occur only as an individual action and not as a class, collective, representative, or consolidated action.

…

NPC and I agree that any and all claim subject to arbitration under this Agreement to Arbitrate may be instituted and arbitrated only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action (collectively referred to in this Agreement to Arbitrate as a "Class Action"). Furthermore, NPC and I agree that neither party can initiate a Class Action in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. Moreover, neither party can join a Class Action or participate as a member of a Class Action instituted by someone else in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. It is the parties' intent to the fullest extent permitted by law to waive any and all rights to the application of Class Action procedures or remedies with respect to all claims subject to this Agreement to Arbitrate. It is expressly agreed between NPC and me that any arbitrator adjudicating claims under this Agreement to Arbitrate shall have no power or authority to adjudicate Class Action claims and proceedings. The waiver of Class Action claims and proceedings is an essential and material term of this Agreement to Arbitrate, and NPC and I agree that if it is determined by a court of competent jurisdiction that it is prohibited or invalid under applicable law, then this entire Agreement to Arbitrate is held to be unenforceable. Otherwise, if any other provision of this Agreement to Arbitrate is held to be unenforceable by a court of competent jurisdiction, such provision shall be deemed voided, however, all remaining provisions of the Agreement to Arbitrate shall remain in full force and effect.

All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its

> prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide.
>
> I acknowledge and agree that this Agreement to Arbitrate is made in exchange for my employment or continued employment, as well as the mutual promises to resolve disputes through arbitration contained in this Agreement….

When Plaintiffs electronically signed the Agreements, they acknowledged that "I understand that, by entering into this Agreement to Arbitrate, I am waiving my right to a jury trial and any right I may have to bring any employment-related claim covered by this agreement as a Class Action (as defined herein) or any class or representative action (either in court or in arbitration) or to participate in such an action," language that appears in bold print directly above the signature line. (*See* Exhibits 1-A, at p. 2; 1-C, at p. 2; 1-E, at p. 2).

## **LAW AND ARGUMENT**

**A.     The FAA Requires Arbitration of Plaintiffs' Claims.**

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA places arbitration agreements "upon the same footing as other contracts." *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (citation omitted). The FAA "declare[s] a national policy favoring arbitration." *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

"Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

Notably, the Supreme Court has confirmed that collective and class action waivers in arbitration agreements are lawful and must be enforced pursuant to the Federal Arbitration Act. *Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307, 2018 U.S. LEXIS 3086, *2 (May 21, 2018). Following the Supreme Court's guidance, a federal court recently lifted its stay of proceedings and compelled arbitration of all claims of Domino's Pizza drivers in a similar expense reimbursement suit. *See Ralph v. HAJ, Inc. et al.*, Case No. 17-cv-1332 JM (S.D. Cal. May 30, 2018). (Order attached at Exhibit 2).

**B.    The Plaintiffs Are Bound by Valid Agreements to Arbitrate.**

The FAA mandates that arbitration agreements are to be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has held that state law governs the interpretation of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011).  The party seeking to avoid arbitration bears the burden of establishing these "generally applicable contract defenses." *See Randolph*, 531 U.S. at 91.  "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

### 1. Plaintiff Murray Formed a Valid Agreement Under Florida Law.

Florida law applies to Plaintiff Murray's Agreement, because it was executed in Florida, Murray's claims arose in Florida, and the Agreement does not include a contrary choice-of-law provision. *See Bhim v Rent-A-Ctr., Inc.*, 655 F.Supp.2d 1307. 1311 (S.D. Fla. 2009). Under Florida law, an enforceable contract requires an offer, acceptance, consideration, and sufficient specification of the essential terms. *West Const., Inc., v. Florida Backtop, Inc*., 88 So.3d 301, 304 (Fla. Dist. Ct. App. 2012).

As to acceptance, signing a document indicates assent to the terms of an agreement. *Jones v. Sallie Mae, Inc*., 2013 WL 6283483, at *5 (M.D. Fla. 2013) (applying Florida law). Under Florida law, "an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." Fla. Stat. § 668.004. [1] Mutually binding promises to arbitrate constitute valid consideration for both parties, and give rise to arbitration agreements. "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier*, 902 So.2d 307, 309 (Fla. Dist. Ct. App. 2005).

Here, Plaintiff Murray formed a valid agreement under Florida law. NPC offered to continue Plaintiff's employment and resolve its claims against Plaintiff through arbitration in exchange for her promise to do the same with legal claims against it. Plaintiff accepted the offer by electronically acknowledging the agreement on September 30, 2015. (Exhibit 1, at ¶16). The Agreement also covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims and time period covered, and the rights retained by the parties.

---

[1] The Electronic Signatures in Global and National Commerce Act (the "E-Sign Act") states that "a contract relating to [interstate commerce] may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a)(2).

## 2. Plaintiff Murray's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.

### a. The Plain Language of the Agreement Covers Wage Claims.

The Arbitration Agreement requires Plaintiff Murray to arbitrate any claims arising between herself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-C, p. 1) Because Murray has sued under the FLSA and Florida state law to recover unpaid wages, her claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, p. 3).

### b. The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, Plaintiff agreed to bring any and all claims "only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action." The Supreme Court has confirmed: "Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced." *Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307, 2018 U.S. LEXIS 3086, *2 (May 21, 2018). Indeed, the United States District Court for the Middle District of Florida has enforced an identical arbitration agreement compelling a former NPC Pizza Hut employee to individually arbitrate his FLSA overtime and minimum wage claims. *See Gregorius v. NPC Int'l, Inc.*, Case No. 2:16-cv-593 (M.D. Fla. November 30, 2016); *see also Houston v. NPC Int'l, Inc.*, Case No. 13-01160-CV-W-GAF, 2014 U.S. Dist LEXIS 185002 (W.D. Mo. March 24, 2014) (enforcing arbitration agreement

and compelling former NPC Pizza Hut employee to individually arbitrate his wage claims against NPC).

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Moreover, the parties' Agreement even specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

In sum, Plaintiff Murray entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

### 3. Plaintiff Naimatullah Nyazee Formed a Valid Agreement Under Missouri Law.

Missouri law applies to Plaintiff Nyazee's Agreement, because it was executed in Missouri, Nyazee's claims arose in Missouri, and the Agreement does not include a contrary choice-of law-provision. A contract is enforceable under Missouri law if there is an offer, an acceptance, and bargained for consideration. *Thacker v. Massman Construction Co.*, 247 S.W.2d 623, 629 (Mo. 1952). An employee and employer's mutual promise to arbitrate constitutes sufficient consideration if that promise is binding upon both sides. *Colton v. Hibbet Sporting Goods, Inc.*, 2016 U.S. Dist. Lexis 76388 (W.D. Mo. June 13, 2016) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. banc 2014)). A promise is binding rather than illusory if neither party retains the unilateral ability to avoid its contractual obligations. *Id*. at *6.

Plaintiff Nayazee formed a valid agreement under Missouri law. NPC offered to resolve its claims against Plaintiff through arbitration (with NPC paying the arbitrator fee and the portion of the arbitration filing fee that is in excess of a similar court filing fee) in exchange for his promise to do the same with legal claims against it and neither party retained the ability to unilaterally avoid its contractual obligations. Plaintiff accepted the offer by electronically acknowledging the agreement on December 3, 2014. (Exhibit 1, at ¶13).

4. **Plaintiff Nyazee's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.**

   a. <u>The Plain Language of the Agreement Covers Wage Claims.</u>

The Arbitration Agreement requires Plaintiff Nyazee to arbitrate any claims arising between himself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-B, p. 1) Because Nyazee has sued under the FLSA and Missouri state law to recover unpaid wages, his claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, pp 2- 3).

   b. <u>The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.</u>

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, the Agreement is clear that Plaintiff agreed to bring any and all claims "only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action." The Supreme Court has confirmed that: "Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced." *Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307, 2018 U.S. LEXIS 3086, *2

(2018). Indeed, the United States District Court for the Middle District of Florida has enforced an identical arbitration agreement compelling a former NPC Pizza Hut employee to individually arbitrate his FLSA overtime and minimum wage claims. *See Gregorius v. NPC Int'l, Inc.*, Case No. 2:16-cv-593 (M.D. Fla. November 30, 2016); *see also Houston v. NPC Int'l, Inc.*, Case No. 13-01160-CV-W-GAF, 2014 U.S. Dist LEXIS 185002 (W.D. Mo. March 24, 2014) (enforcing arbitration agreement and compelling former NPC Pizza Hut employee to individually arbitrate his wage claims against NPC).

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Moreover, the parties' Agreement even specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

In sum, Plaintiff Nyazee entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

### 5. Plaintiff Collins Formed a Valid Agreement Under Illinois Law.

Illinois law applies to Plaintiff Collins' Agreement, because it was executed in Illinois, Collins' claims arose in Illinois, and the Agreement does not include a contrary choice-of-law provision. According to Illinois law, an arbitration agreement is enforceable where there is an offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26, 830 N.E.2d 619, 624, 294 Ill. Dec. 207 (2005).

Here, Plaintiff Collins formed a valid agreement under Illinois law. NPC offered to continue Plaintiff's employment *and* resolve its claims against Plaintiff through arbitration in exchange for his promise to do the same with legal claims against it (with NPC also paying the Arbitrator fee and the portion of the arbitration filing fee that is in excess of a similar court filing fee). Plaintiff accepted the offer by electronically acknowledging the agreement. *See Scroggins v. Uber Techs*, 2017 Dist. Lexis 10815 (January 26, 2017) (finding acceptance of arbitration agreement by employee's electronic confirmation through the employer's digital portal). The Agreement also covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims and time period covered, and the rights retained by the parties.

6. **Plaintiff Collin's Wage Claims Fall Within the Scope of the Arbitration Agreement—Which Provides for Individual Arbitration.**

   a. <u>The Plain Language of the Agreement Covers Wage Claims.</u>

The Arbitration Agreement requires Plaintiff Collins to arbitrate any claims arising between himself and NPC, specifically including claims concerning wages and compensation. (*See* Exhibit 1-A, p. 1) Because Collins has sued under the FLSA and Illinois state law to recover unpaid wages, his claims fall squarely within the scope of the Arbitration Agreement and must be arbitrated pursuant to the Agreement. (*See* Compl, p. 2).

   b. <u>The Agreement Expressly Provides that Claims Must be Arbitrated as Individual Claims.</u>

Parties to arbitration agreements "may specify with whom they choose to arbitrate disputes" and as such, the ultimate question regarding the availability of class arbitration proceedings is "whether the parties *agreed to authorize* class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010). Here, the Agreement is clear that Plaintiff agreed to bring any and all claims "only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or

consolidated action." The Supreme Court has confirmed that: "Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced." *Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307, 2018 U.S. LEXIS 3086, *2 (2018). Indeed, the United States District Court for the Middle District of Florida has enforced an identical arbitration agreement compelling a former NPC Pizza Hut employee to individually arbitrate his FLSA overtime and minimum wage claims. *See Gregorius v. NPC Int'l, Inc.*, Case No. 2:16-cv-593 (M.D. Fla. November 30, 2016); *see also Houston v. NPC Int'l, Inc.*, Case No. 13-01160-CV-W-GAF, 2014 U.S. Dist LEXIS 185002 (W.D. Mo. March 24, 2014) (enforcing arbitration agreement and compelling former NPC Pizza Hut employee to individually arbitrate his wage claims against NPC).

Additionally, questions of arbitrability, including whether parties had a valid arbitration agreement at all or whether concededly binding arbitration clause applies to a certain type of controversy, are for courts to decide. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068-69, 186 L.Ed. 2d 113 (2013). Here, the parties' Agreement also specifies that "issues relating to arbitrability, the scope of enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide."

In sum, Plaintiff Collins entered into a valid and enforceable arbitration agreement with NPC. The Agreement specifically covers wage claims like those raised by Plaintiff and requires that they proceed to arbitration as individual claims.

Dated: June 7, 2018

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Katherine R. Sinatra

Mark C. Tatum
Katherine R. Sinatra
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
mtatum@shb.com
ksinatra@shb.com

Counsel for Defendant
NPC International, Inc.

# CERTIFICATE OF SERVICE

I certify that on June 7, 2018 I served the foregoing document on the following Plaintiffs' counsel by e-mail service through the Court's ECF system:

Jeremiah L. Frei-Pearson
Chantal Khalil
Todd S. Garber
**Finklestein, Blankinship, Frei-Pearson & Garber LLP**
445 Hamilton Ave., Ste. 605
White Plains, NY 10601

/s/ Katherine R. Sinatra
Attorney for Defendant