**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TONY COLLINS, NAIMATULLAH NYAZEE, and ANN MURRAY, for themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 3:17-cv-00312-NJR-RJD |
| v. | Class / Collective Action |
| NPC INTERNATIONAL, INC., | |
| Defendant. | |

**PLAINTIFFS' MOTION TO LIFT STAY**

Plaintiffs Tony Collins, Naimatullah Nyazee, and Ann Murray ("Plaintiffs") hereby move this Court to lift the stay entered on June 21, 2018 [D.E. 93] to allow Opt-in Plaintiffs who did not sign arbitration agreements with Defendant to litigate their claims. In support of this Motion, Plaintiffs state:

**BACKGROUND**

1.      Plaintiffs filed this action on March 24, 2017 seeking unpaid minimum wages under federal and various state laws due to Defendant's systematic under-reimbursement of its delivery drivers at its Pizza Hut franchise locations across the country. *See* D.E. 1. During the course of the litigation, approximately twenty-six (26) total delivery drivers joined this action as Opt-in Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201, et al. *See* D.E. 5, 15, 34, 38, 50, 51, 53, 56, 57, 60, 65, 66, 77, 82, and 88.

2.      Following significant motion practice, including an original stay of this matter pending the United States Supreme Court's decision in *Epic Systems Corp. v. Lewis*, No. 16-285, 2018 EL 2292444 (U.S. May 21, 2018), this Court ultimately granted Defendant's Renewed

Motion to Compel Arbitration and Stay Proceedings [D.E. 90] and officially stayed this matter

on June 21, 2018 pending arbitration.  *See* D.E. 93.

3.      Subsequent to the stay being entered, the Parties have conferred several times and

Defendant has scoured its records to retrieve arbitration agreements for each Plaintiff and Opt-in

Plaintiff.[1]  However, Defendant was unable to locate arbitrations agreements for John W. Cook,

Steven Fultz, Michael Lee, Kristen Marshall and Brian O'Donnell.  These class members have

not signed arbitrations agreements and Defendant cannot compel their claims to arbitration.

4.      Plaintiffs request this Court lift the stay in this matter to allow the individuals who

did not sign valid arbitration agreements with Defendant to litigate their claims.  Once the stay is

lifted, Plaintiffs intend to file the Amended Complaint, attached to the Declaration of Jeremiah

Frei-Pearson, naming the non-arbitration Opt-in Plaintiffs as the named Plaintiffs here in this

action for this matter to proceed in court.[2]

## ARGUMENT

### I.      This Court Should Lift The Stay.

### A.      Defendant Was Unable to Locate Arbitration Agreements for All Plaintiffs and Opt-in Plaintiffs.

This Court originally stayed this matter on the premise that Defendant had each Plaintiff

and Opt-in Plaintiff delivery driver execute arbitration agreements during their employment with

NPC.  Notwithstanding such belief, Defendant has failed to produce arbitration agreements for

the individuals named above and has produced an unsigned arbitration agreement for one Opt-in

Plaintiff.  As such, Defendant cannot meet its burden to compel these individuals to arbitration.

---

[1] During this period of time while Defendant was searching its records, Defendant agreed to toll the statute of limitations for all Plaintiffs and Opt-in Plaintiffs.

[2] For those Plaintiffs and Opt-in Plaintiffs who signed arbitration agreements, their claims will continue in arbitration.

*See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) ("Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate.").  Here, Defendant clearly cannot produce a written agreement to arbitrate for the above named individuals.  As such, Defendant's cannot compel these individuals to arbitrate their wage and hour claims here and these Opt-in Plaintiffs must be allowed to pursue their claims in court.  *See, e.g.*, *Barkley v. Pizza Hut of America, Inc.*, No. 14-376, 2014 WL 3908197 (M.D. FL. Aug. 11, 2014) (denying motion to compel arbitration where employer submitted declarations stating that all employees agreed to arbitrate, but failed to produce declarations signed by all plaintiffs);  *Tae In Kim v. Dongbu Tour & Travel, Inc.*, 529 F. App'x 229, 234 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 826 (U.S. 2013) ("Dongbu's claim that Tae In Kim agreed to arbitrate any dispute that he might have with Dongbu is devoid of any possible merit, as the District Court plainly believed, because Dongbu wants us to require him to arbitrate his claims pursuant to an arbitration clause contained in a contract that it cannot show that he executed"); *Grant v. House of Blues New Orleans Restaurant Corp.*, No. 10-3161, 2011 WL1596207, at *5-7 (E.D. La. Apr. 27, 2011) (denying motion to compel arbitration where employer claimed to require all employees to agree to arbitrate, but could not provide a complete arbitration agreement signed by the plaintiff).

   B.     This Court's Power to Stay.

   "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936) (vacating stay as an abuse of discretion).  "The Court has discretion to stay a proceeding after considering and

weighing the competing interests, including such things as the hardship or inequity that would be suffered by the parties or others if the litigation moves forward, the efficient use of judicial resources, the length of the anticipated delay and the complexity of the issues involved." *Mogg v. Jacobs*, No. 15-1142, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016); *see also Square D Co. v. Showmen Supplies, Inc.*, No. 06-426, 2007 WL 1430723, at *2 (N.D. Ind. 2007) (noting that a district court's discretion to grant a stay must be exercised in a manner consistent "with principles of fairness and judicial economy" and denying stay).

      C.    <u>Plaintiffs and the Class Will be Harmed if the Stay is Not Lifted.</u>

Here, the equities favor lifting the stay as to the Opt-in Plaintiffs who did not sign valid arbitration agreements.  No reasons exist while this matter should continue to be stayed as to these individuals.  In fact, these individuals would be greatly prejudiced as they would be caught in a legal no-man's land where they could not pursue their claims in arbitration, but were stayed in court for an undetermined amount of time.

The Supreme Court, so as to ensure that a stay relief remains exceptional rather than routine, held that "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward."  *See Landis*, 299 U.S. at 254-55 (vacating stay).  Here, Defendant can make out no clear case of hardship or inequity.  It admittedly does not have arbitration agreements for these individuals and as such, must face these individuals in a court of law like in any other legal dispute.").  Being required to defend a suit and even proceed to trial, without more, "does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Additionally, when one considers that Defendant could not produce valid arbitration agreements for five (5) out of the twenty-six (26) total Plaintiffs and Opt-in Plaintiffs who joined this matter (equating to 19%), then Defendant presumably will not be able to locate such agreements for a significant number of the class of delivery drivers here.  As such, it is imperative for this stay to be lifted, for Plaintiffs to file an Amended Complaint, and for this matter to be certified in order for other similarly situated delivery drivers to be apprised of their rights and given an opportunity to join this action.  *See* 29 U.S.C. § 256(b) (providing that "in the case of a collective or class action instituted under the [FLSA] . . . it shall be considered to be commenced in the case of any individual claimant . . . on the subsequent date on which such written consent is filed in the court in which the action was commenced.").  Because the signed consents may not relate back to the original filing date of the complaint, every day that the certification of the collective action is delayed prejudices the members of the proposed collective action, as their statute of limitations continues to run until the court grants certification and their notice of written consent is filed with the court.  *See, e.g.*, *Larsen v. Clearchoice Mobility, Inc.*, No. 11-1701, 2011 WL 3047484, at *2 (N.D. Ill. July 25, 2011) (FLSA class members "could suffer irreparable harm if they are not provided with notice of their potential FLSA claims before the statute of limitations expires.  With respect to an opt-in plaintiff, an action is not commenced until his or her consent is filed."); *Hart v. Crab Addison, Inc.*, No. 13-6458, 2015 WL 365785, at *5, n.2 (W.D.N.Y. Jan. 27, 2015) (explaining that a "delay in ruling on the [FLSA conditional] certification application would cause the FLSA class members claims to 'die daily' due to the statute of limitations"); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (Sotomayor, J.) (explaining that each opt-in FLSA class member's claims are not tolled by the

filing of a complaint and "continue to die daily" until the date the opt-in joins the collective action, which typically happens after conditional certification and the sending of notice).

In addition, a stay would likely result in fewer of the members of the proposed collective even receiving notice of the action.  Even setting aside the drivers whose claims would expire during the continued stay, a stay would delay the issuance of notice to members of the collective, which would result in some drivers' addresses becoming stale and those drivers effectively being denied the opportunity to participate in this litigation.[3]

Moreover, Plaintiffs and the other delivery drivers suffer direct financial harm every day this suit is prolonged, as they continue to be paid by NPC at a rate far below the legal minimum. Accordingly, a stay would prejudice them (i) by prolonging this suit and increasing the number of days under which they will continue to suffer from NPC's unlawfully low wage and (ii) by causing some delivery drivers not to receive notice and thereby effectively denying those workers their right to participate in this action.  Thus, there is far more than a "fair possibility that the stay for which [NPC] prays will work damage to" Plaintiffs and the other members of the proposed class.  *Landis*, 299 U.S. at 251 (noting that the non-movant plaintiffs claimed that the stay of the proceedings would prejudice them by "the loss that they were suffering day by day" and ultimately vacating the stay as overly long).

---

[3] Where notice is not issued until long after the unlawful conduct at issue, "it stands to reason that a mailing of . . . notices would not reach many [class members] because of stale addresses." *Dumont v. Charles Schwab & Co.*, No. 99-2840, 2000 WL 1023231, at *7 (E.D. La. July 21, 2000).  Accordingly, under the FLSA, courts typically "facilitate prompt notice."  *Carter v. XPO Last Mile, Inc*, No. 16-01231, 2016 WL 5680464, at *6 (N.D. Cal. Oct. 3, 2016) (conditionally certifying a FLSA collective of delivery drivers); *accord Jarosz v. St. Mary Med. Ctr.*, No. 10-3330, 2014 WL 4722614, at *1 (E.D. Pa. Sept. 22, 2014) (conditionally certifying a collective to "facilitate prompt dissemination of notice to potential collective action members").  If this case is stayed further, some drivers will move, the addresses in Defendant's records will become stale, and those drivers will therefore be unable to receive notice and will effectively be denied an opportunity to join the collective and recover for the wage violations at issue.

Finally, a stay, and the prejudice it would cause to Plaintiffs and the other members of the proposed class and collective actions, would frustrate the wage and hour laws intended to protect vulnerable workers.[4]  Because the FLSA is a remedial statute, "the [FLSA] should be construed liberally; a broad reading is essential to accomplish its goals." *Schaefer-LaRose v. Eli Lilly & Co.*, No. 07-1133, 2008 WL 5384340, at *2 (S.D. Ind. Dec. 17, 2008) (citing *Reich v. Great Lakes Indian Fish & Wildlife Comm'n*, 4 F.3d 490, 499 (7th Cir.1993)); *accord Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir.1992) ("A generous reading, in favor of those whom congress intended to benefit from the law, is . . . appropriate when considering issues of time limits and deadlines.").

    D.    <u>Lifting the Stay Will Not Burden the Court.</u>

Lifting the stay and proceeding with this matter into conditional certification will not burden the Court.  As articulated in the original motion for conditional certification, the named plaintiffs easily meet their threshold showing that the putative plaintiffs are similarly situated with respect to whether an FLSA violation has occurred.  *See* P.s' Cond. Cert. Mot., Dkt. 19.  As noted therein, delivery driver classes have been conditionally certified in virtually every prior FLSA delivery driver under-reimbursement action and certification is similarly appropriate here.  Indeed, "numerous district courts . . . have considered motions for collective action certification under the FLSA brought by plaintiff delivery drivers against defendant pizza companies for minimum wage violations.  *In every case, courts have conditionally certified a collective action*." *Smith v. Pizza Hut, Inc*., No. 09-01632, 2012 WL 1414325, at *4 (D. Colo. Apr. 21, 2012) (emphasis added) (conditionally certifying a class of pizza delivery drivers who were under-

---

[4] A stay would perpetuate an unlawful status quo and go directly contrary to the purpose of the wage and hour laws at issue, as Defendant would use the stay to continue to reap the unlawful excess profits it makes by unlawfully underpaying its delivery drivers, while the drivers would continue to suffer economically.

reimbursed for their automotive expenses and collecting similar cases where classes of pizza delivery drivers were conditionally certified); *accord Bass v. PJComn Acquisition Corp.,* No. 09-01614, 2010 WL 3720217, at *2 (D. Colo. Sept. 15, 2010) (same); *Hackett v. ADF Restaurant Investments*, No. 15-1688, Dkt. 33 (D. Md. Oct. 21, 2015) (granting conditional certification in a FLSA delivery driver under-reimbursement collective action against a Pizza Hut franchisee); *Tegtmeier v. PJ Iowa, L.C.*, No. 15-00110, 2016 WL 5340186 (S.D. Iowa Sept. 21, 2016) (conditionally certifying a FLSA collective action of under-reimbursed delivery drivers against a pizza chain); *Prince v. QS America, Inc*., No. 15-2033, Dkt. 18 (N.D. Ga. Aug. 31, 2015) (same); *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257 (E.D. Pa. 2014) (same).

Indeed, as is outlined in Plaintiffs' motion for conditional certification, *see* Dkt. 19 at 11-12, Judge Lungstrum, in *Wass*, conditionally certified a nearly identical FLSA collective action of all then-former and -current delivery drivers employed by NPC involving virtually the same company-wide delivery driver under-reimbursement scheme at issue here. *See Wass*, Dkt. 162, 2011 WL 1118774, at *13 (Mar. 28, 2011).

Defendant's only possible defense to conditional certification of a collective action is the collective action waiver in its arbitration agreement. However, as outlined *supra*, Defendant is unable to produce valid arbitration agreements for a significant portion of the class. No reasons exist whatsoever not to inform these putative class members of this action.

Moreover, the weight of authority holds that the existence of arbitration agreements is irrelevant at the conditional certification stage. Indeed, courts have consistently held that "the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination." *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-8228, 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); *accord Woods v. Club Cabaret, Inc.*, No. 15-01213, 2015 WL

6444793, at *5 (C.D. Ill. Sept. 28, 2015) (holding that "any issues related to opt-in plaintiffs with arbitration agreements can be addressed at step-two of the class certification process," not at conditional certification stage); *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-601, 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (holding it "inappropriate for the Court to consider the effect of any arbitration agreements" during the first stage of collective action certification); *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 15-695, 2016 WL 3626219, at *4 (M.D. Fl. July 7, 2016) (holding that "issues regarding arbitration agreements executed by employees are more properly examined at the second tier of the certification process because they involve merit-based determinations"); and *Lloyd v. J.P. Morgan Chase & Co.*, No. 11-9305, 2014 WL 2109903, at *7 (S.D.N.Y. Apr. 1, 2014) ("[T]he existence of an arbitration agreement is irrelevant at the conditional certification stage.").

As such, here, no reasons exist to extend the stay further as to the Plaintiffs and Opt-in Plaintiffs who did not sign valid arbitration agreements.

## II. <u>Plaintiffs Will File An Amended Complaint Following the Stay Being Lifted.</u>

Once this Court officially lifts the stay of this matter, Plaintiffs intend to file an Amended Complaint naming new named Plaintiffs from the individuals referenced above who did not sign valid arbitration agreement. Attached is the Exhibit A, the Plaintiffs proposed Amended Complaint, which includes new named Plaintiffs from the individuals referenced above who did not sign valid arbitration agreement.  Good cause exists under Rule 15 of the Federal Rules of Civil procedures to amend the complaint as Plaintiffs intend to name new named Plaintiffs as the class representatives here who did not have valid arbitration agreements with Defendant and who cannot be compelled to arbitration.  These newly named Plaintiffs will pursue their and other class members' rights under the FLSA and state law in order for these individuals to be paid correct wages by Defendant.

WHEREFORE, Plaintiffs respectfully request this Court lift the stay as to John W. Cook, Steven Fultz, Michael Lee, Kristen Marshall, and Brian O'Donnell in order for Plaintiffs to file an Amended Complaint and pursue this matter in Court.

Dated: April 16, 2019

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By: */s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson (*Pro Hac Vice*)
Todd S. Garber (*Pro Hac Vice*)
Chantal Khalil (*Pro Hac Vice*)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com
ckhalil@fbfglaw.com

**MORGAN & MORGAN, P.A.**

*/s/ C. Ryan Morgan* (with consent)
C. Ryan Morgan (*Pro Hac Vice*)
20 North Orange Avenue, 14th Floor
P.O. Box 4979
Orlando, Florida 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401
RMorgan@ForThePeople.com

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2019, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: Andrew M. Meerkins, Katherine R. Sinatra, and Mark C. Tatum.

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson