**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TONY COLLINS, NAIMATULLAH
NYAZEE, and ANN MURRAY, for
themselves and all others similarly situated,

      Plaintiffs,

v.

NPC INTERNATIONAL, INC.,

      Defendant.

Case No. 3:17-cv-00312-NJR-RJD

Class / Collective Action

**PLAINTIFFS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

RELEVANTFACTUAL AND  PROCEDURAL BACKGROUND ............................ 2

I.      Relevant History Of This Litigation ..................................................... 2

II.     The Waived Plaintiffs, Along With 1,300
        Other Drivers, Attempted To Arbitrate Their
        Under-Reimbursement Claims Against NPC, And NPC Refused To Participate ............ 4

ARGUMENT ............................................................................................. 5

I.      Leave To Amend Should Be Freely Given ........................................... 5

II.     Plaintiffs Have Good Cause To Amend And NPC
        Cannot Show Futility, Bad Faith, Undue Delay, Or Undue Prejudice ............. 6

        A.      Plaintiffs' Proposed Amendments Are Not Futile ................................. 7

                1.      The Unsigned Plaintiffs Must Be Allowed To
                        Bring Their Minimum Wage Claims Before This Court .......................... 8

                2.      The Waived Plaintiffs Must Be Allowed To
                        Bring Their Minimum Wage Claims Before This Court .......................... 9

        B.      Plaintiffs' Motion Is Not Made In Bad Faith ...................................... 12

        C.      Plaintiffs Were Diligent In Seeking To
                Amend And There Was No Undue Delay ........................................... 13

        D.      Defendant Will Not Suffer Undue Prejudice
                As A Result of Plaintffs' Proposed Amendments ................................. 14

CONCLUSION ......................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*,
  68 F.R.D. 383 (N.D.Ill.1975) ............................................................................... 14

*Ameritech Corp. v. Computer Sys. Solutions, Inc.*,
  1999 U.S. Dist. LEXIS 6743 (N.D. Ill. Apr.26, 1999) ........................................... 14

*Barkley v. Pizza Hut of America, Inc.*,
  2014 WL 3908197 (M.D. FL. Aug. 11, 2014) .................................................. 2, 8

*Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*,
  377 F.3d 682 (7th Cir. 2004) ................................................................................ 6

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ......................................................................... 2, 11

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  725 F.2d 192 (2d Cir. 1984) ............................................................................... 10

*Fastiggi v. Waterview Hills Nursing Ctr., Inc.*,
  6 F. Supp. 2d 242 (S.D.N.Y. 1998) .................................................................... 12

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................ 6

*Foreman v. King*,
  2013 WL 4482612 (N.D. Ill. Aug. 20, 2013) ...................................................... 7

*Freeman v. SmartPay Leasing, LLC*,
  771 Fed. Appx. 926 (11th Cir. 2019) .............................................................. 10, 11

*Garcia v. Mason Contract Prods.*, LLC,
  2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) .................................................... 11

*Grumhaus v. Comerica Sec., Inc.*,
  223 F.3d 648 (7th Cir. 2000) ............................................................................... 9

*Hahn v. Anselmo Lindberg Oliver LLC*,
  2017 WL 1196955 (N.D. Ill. Mar. 31, 2017) ...................................................... 7

*Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*,
  2016 WL 5341809 (N.D. Ill. Sept. 23, 2016) ...................................................... 7

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
    800 F.3d 343 (7th Cir. 2015) ................................................................................. 6

*Luckett v. Conlan*,
    561 F. Supp. 2d 970 (N.D. Ill. 2008) ...................................................................... 14

*Nadeau v. Equity Residential Props. Mgmt. Corp.*,
    251 F. Supp. 3d 637 (S.D.N.Y. 2017) ................................................................ 10, 11

*Pre-Paid Legal Services, Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) ............................................................................. 10

*Rapaport v. Soffer*,
    2011 WL 1827147 (D. Nev. May 12, 2011) ............................................................ 11

*Roach  v. BM Motoring, LLC*,
    228 N.J. 163 (N.J. 2017) ...................................................................................... 10

*Ruggles v. Wellpoint, Inc.*,
    687 F.Supp.2d 30 (N.D.N.Y.2009) ..................................................................... 13, 14

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
    786 F.3d 510 (7th Cir. 2015) ............................................................................... 6, 7

*S.E.C. v. DCI Telecomm., Inc.*,
    207 F.R.D. 32 (S.D.N.Y. 2002) ............................................................................. 12

*Sink v. Aden Enterprises*,
    352 F.3d 1197 (9th Cir. 2003) ............................................................................... 10

*Spano v. V & J Nat'l Enterprises, LLC*,
    264 F. Supp. 3d 440 (W.D.N.Y. 2017) .................................................................... 11

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*,
    969 F.2d 585 (7th Cir.1992) ............................................................................... 9, 10

*Stanley v. A Better Way Wholesale Autos, Inc.*,
    2018 WL 3872156 (D. Conn. Aug. 15, 2018) ........................................................... 11

*Tae In Kim v. Dongbu Tour & Travel, Inc.*,
    529 F. App'x 229 (3d Cir. 2013) .............................................................................. 8

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    417 F.3d 682 (7th Cir. 2005) .................................................................................. 8

**Statutes**

29 U.S.C. § 201 ............................................................................................................ 3

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 5

Federal Rule of Civil Procedure 15 ...................................................................... 5, 6, 7

**Other Authorities**

Federal Practice and Procedure § 1357 (2d ed. 1990) ................................................. 7

## PRELIMINARY STATEMENT

Plaintiffs Tony Collins, Naimatullah Nyazee, and Ann Murray brought this action on behalf of all delivery drivers employed by Defendant NPC International, Inc. ("NPC"), the largest Pizza Hut franchisee in the United States, to redress NPC's systematic policy of under-reimbursing delivery drivers, thereby driving their effective wages well below the legal minimum required by state and federal laws.  Plaintiffs, by their attorneys, hereby respectfully submit this Memorandum of Law in support of their Motion for Leave to Amend the Complaint (ECF No. 1).  The Amended Complaint substitutes as Named Plaintiffs Kristin Marshall and Steven Fultz, drivers for whom Defendant has not been able to produce signed arbitration agreements after being given sufficient time to do so (the "Unsigned Plaintiffs"), and Romie Campbell, David Short, Jason Huyett, Amanda Lima, Anthony Hanna, Jack Carroll, Derrick Sapp, James Platt, Chancellor Myers, Blake Bolin, David Vega, Michelle Enyeart, Sentell Hill, and Eric Brown, drivers whose claims NPC has refused to arbitrate (the "Waived Plaintiffs").  The Amended Complaint further adds applicable claims under the minimum wage laws of states in which these delivery drivers worked for NPC.

NPC previously represented that it, as standard policy, enters into arbitration agreements that prevent employees from pursuing their minimum wage claims in a court of law and instead require both NPC and its employees to resolve those disputes in individual arbitrations administered by the American Arbitration Association ("AAA") and under the AAA's employment rules.  Based on this representation, the Court stayed this litigation pending arbitration.  However, as Plaintiffs and Opt-In Plaintiffs to this litigation began pursuing arbitration, they learned that NPC does not, in fact, have signed arbitration agreements for all its delivery driver employees, or indeed even for all of the approximately 26 drivers who had already opted into this litigation.  Courts routinely hold that an employer cannot enforce

1

arbitration agreements against employees for whom the employer cannot produce an arbitration agreement. *See, e.g.*, *Barkley v. Pizza Hut of America, Inc.*, No. 14-376, 2014 WL 3908197 (M.D. FL. Aug. 11, 2014); *see also infra* at § II-A-1 (collecting cases). Thus, NPC has no basis to oppose amending the complaint to include the Unsigned Plaintiffs.

Furthermore, since NPC successfully obtained an order from this Court compelling arbitration, it has refused to participate in duly-initiated arbitrations brought by over 1,300 other delivery drivers raising the very same type of claims that NPC told this court must be decided in arbitration. The AAA has indicated that it will close those arbitrations due to NPC's nonpayment. As courts routinely hold in similar circumstances, "when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005); *see also infra* at § II-A-2 (collecting cases). Defendant has waived any right it had to require the Waived Plaintiffs to arbitrate their claims, and in fact the AAA has stated that it will refuse to administer <u>any</u> arbitration claims for Defendant. As such, Defendant has no basis to oppose amending the complaint to include the Waived Plaintiffs.

Plaintiffs therefore respectfully request leave to amend their complaint to litigate on behalf of those delivery drivers against whom Defendant can no longer use arbitration as a shield.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

## I. <u>Relevant History Of This Litigation</u>

Plaintiffs initiated this action on March 24, 2017 seeking unpaid minimum wages under federal and various state laws due to Defendant's systematic under-reimbursement of its delivery drivers at its Pizza Hut franchise locations across the country. *See* ECF No. 1. During the course of the litigation, approximately 26 delivery drivers joined this action as Opt-In Plaintiffs

under the Fair Labor Standards Act, 29 U.S.C. § 201, *et al*. ("FLSA").  *See* ECF Nos. 5, 15, 34, 38, 50, 51, 53, 56, 57, 60, 65, 66, 77, 82, and 88.  On May 1, 2017, NPC filed a motion to compel individual arbitration or stay this matter, producing arbitration agreements for Plaintiffs Collins, Nyazee, and Murray.  ECF Nos. 40-41.  On October 25, 2017, the Court granted a stay pending the United States Supreme Court's decision in *Epic Systems Corp. v. Lewis*, No. 16-285, 2018 EL 2292444 (U.S. May 21, 2018) (ECF No. 87) and, following the decision in that matter, the Court ultimately granted Defendant's Renewed Motion to Compel Arbitration and Stay Proceedings (ECF No. 90), officially staying this matter on June 21, 2018 pending arbitration. *See* ECF No. 93.

Subsequent to the stay being entered, the Parties conferred numerous times, with Defendant scouring its records to retrieve arbitration agreements for each Opt-In Plaintiff.[1] However, Defendant was unable to locate arbitrations agreements for Opt-In Plaintiffs John W. Cook, Steven Fultz, Michael Lee, Kristen Marshall, and Brian O'Donnell.  These delivery drivers have not signed arbitrations agreements and Defendant cannot compel their claims to arbitration.  On April 16, 2019, Plaintiffs submitted a motion to lift the stay on this litigation to allow Plaintiffs to amend the operative complaint and allow litigation to resume for delivery drivers not bound by arbitration agreements.  ECF No. 95.  Defendant did not oppose lifting the stay to allow the five Opt-In Plaintiffs for whom it could not provide arbitration agreements to litigate their claims individually, but opposed permitting Plaintiffs to amend to proceed with class claims with Ms. Marshall and Mr. Fultz as Named Plaintiffs and class representatives.  ECF

---

[1] Defendant repeatedly requested additional time to locate these arbitration agreements, to which Plaintiffs consented based on Defendant's agreement to toll the statute of limitations for all Plaintiffs and Opt-In Plaintiffs.

No. 96.  On June 19, 2019, the Court granted Plaintiffs' motion to lift the stay and instructed

Plaintiffs to file the instant motion for leave to amend their complaint.[2]  ECF No. 98.

## II.    The Waived Plaintiffs, Along With 1,300
Other Drivers, Attempted To Arbitrate Their
Under-Reimbursement Claims Against NPC, And NPC Refused To Participate.

Between April 11, 2019 and June 19, 2019, the Waived Plaintiffs and approximately

1,300 other NPC delivery drivers submitted arbitration claims before the American Arbitration

Association related to NPC's policy of under-reimbursing them for their vehicle-related expenses

-- the same claims at the heart of this litigation.  *See* Declaration of Warren D. Postman

("Postman Decl."), ¶¶ 4-7.  Those 1,320 drivers timely paid all filing fees the drivers were

required to pay under the AAA's Rules.  *See id.* at ¶¶ 8-9.  Under the AAA Employment

Arbirtration Rules and NPC's arbitration agreement, an employee filing a demand for arbitration

must pay a filing fee equal to the lesser of $300 or the amount to file a claim in state court.  *Id.* at

¶ 8.  Each driver met this obligation by paying the fee or submitted a hardship-based fee waiver

the AAA accepted in light of the low wages earned by the driver.  *Id.* at ¶ 9.

The AAA determined that each of the above drivers had met all the filing requirements

necessary to initiate individual arbitration and therefore set a deadline of July 22 for NPC to pay

its corresponding share of the filing fee necessary to commence each arbitration.  *Id.* at ¶ 10.

NPC failed to submit payment for even a single arbitration on July 22 and the AAA convened an

---

[2] The Court initially instructed Plaintiffs to submit this motion by July 18, 2019 (ECF No. 98) and Plaintiffs originally submitted a proposed amended complaint that included only Ms. Marshall and Mr. Fultz as substitute Named Plaintiffs.  ECF No. 97-3.  However, after learning that NPC appeared to be refusing to arbitrate over 1,300 delivery drivers' claims, and that those claims would soon be administratively closed, as described infra. § II, Plaintiffs requested an extension to August 1, 2019 to submit this filing -- which the Court granted on July 16, 2019 (ECF No. 100) -- and revised their proposed Amended Complaint to incorporate the Waived Plaintiffs as additional Named Plaintiffs and class representatives, with attendant state law claims.

administrative conference call on July 25.  *Id.* at ¶¶ 11-12.  On that call, the AAA again

confirmed that each driver had met the filing requirements necessary to commence individual

arbitration and set a final deadline of August 1, 2019 for NPC to submit the filing fees necessary

to proceed with arbitration.  *Id.* at ¶ 13.  AAA stated on the call and confirmed in a letter the

same day that if NPC failed to comply with this final deadline, AAA would close each driver's

arbitration due to NPC's refusal to proceed.  *Id.* at ¶ 14.  AAA further indicated that it would

refuse to administer future arbitrations involving NPC and would require that NPC remove from

its contract the requirement that employees proceed to arbitration before AAA in order to avoid

"confusion to the public." *Id.* at ¶ 15.  Despite being given multiple deadlines, NPC refused to

pay the required AAA fees in every single one of these arbitrations.  *See id.* at ¶ 16.

    As such, the AAA will administratively close all 1,320 arbitrations -- including those of

all the Waived Plaintiffs -- and will decline to administer any further arbitrations involving NPC

whatsoever.  *See* Exhibit B to Postman Decl.   Having violated its own agreement to arbitrate,

NPC has waived any right to enforce that agreement against the Waived Plaintiffs, and Plaintiffs

accordingly now move to amend their complaint to include the Waived Plaintiffs as Named

Plaintiffs.

<u>**ARGUMENT**</u>

## I.    <u>Leave To Amend Should Be Freely Given</u>

    Federal Rule of Civil Procedure 15 permits a party to amend its pleading with "the

court's leave," which should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P.

15(a)(2).  "In the absence of any apparent or declared reason -- such as undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely

given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).[3]  This rule "require[s] a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend."  *Life Plans, Inc. v. Sec. Life of Denver Ins. Co*., 800 F.3d 343, 357–58 (7th Cir. 2015).  That liberal approach to amendment reflects a "policy of deciding cases on the basis of the substantive rights involved rather than on technicalities."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004)).

## II.    Plaintiffs Have Good Cause To Amend And NPC Cannot Show Futility, Bad Faith, Undue Delay, Or Undue Prejudice.

NPC previously attempted to avoid litigating this action because it claimed that the plaintiffs should bring their claims in arbitration.  However, the Unsigned and Waived Plaintiffs, like thousands of NPC's other delivery driver employees, are not required -- and indeed *cannot* -- obtain access to justice in arbitration.  As described above, NPC has been unable to produce signed arbitration agreements for the Unsigned Plaintiffs, has affirmatively refused to arbitrate with the Waived Plaintiffs, and has systematically refused to arbitrate with over 1,300 other NPC delivery drivers.  Plaintffs seek leave to amend the complaint because these employees otherwise will have no access to any forum in which they can seek to vindicate their rights.  That is good cause under any standard, and easily meets the permissive standard of Rule 15.  After attempting to derail Plaintiffs' claims by sending them to arbitration only to do an about face and prevent Plaintiffs' claims from proceeding before the AAA, NPC is in no position to argue that the

---

[3] The "repeated failure to cure deficiencies by amendments previously allowed" criterion is clearly inapplicable in this case, as none of Plaintiffs' claims have ever been dismissed and no pleading deficiencies have been identified.

proposed amendments are futile, unduly delayed, a source of undue prejudice, or being made in bad faith.

### A.    Plaintiffs' Proposed Amendments Are Not Futile.

The Seventh Circuit explained that Rule 15 "requires that plaintiff be given every opportunity [to amend and] [a]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (quoting 5A Charles Alan Wright & Authrur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  Even where "it appears unlikely that plaintiffs have a valid claim," amendment must be allowed if the court is "unable to say with certainty that any amendment would be futile." *Hahn v. Anselmo Lindberg Oliver LLC*, No. 16-6908, 2017 WL 1196955, at *6 (N.D. Ill. Mar. 31, 2017); *see also, e.g.*, *Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*, No. 14-9419, 2016 WL 5341809, at *5 (N.D. Ill. Sept. 23, 2016) ("It appears unlikely that Kraft will be able to state a fraud claim against SunOpta, having failed twice, but at this point the Court is unable to say with certainty that any amendment would be futile.")  The party opposing amendment bears the burden of demonstrating that leave to amend would be futile.  *See, e.g.*, *Foreman v. King*, No. 12-50419, 2013 WL 4482612, at *1 (N.D. Ill. Aug. 20, 2013).

NPC cannot even colorably argue that the proposed amended complaint does not state a claim.  Therefore, Plaintiffs' proposed amendments to substitute Named Plaintiffs who have never agreed to arbitrate or who have previously attempted to arbitrate only to be denied the opportunity to do so by NPC's own actions, are clearly not futile.

1. **The Unsigned Plaintiffs Must Be Allowed To**
   **Bring Their Minimum Wage Claims Before This Court.**

Despite being given ample opportunity, Defendant has failed to produce signed arbitration agreements for multiple Opt-In Plaintiffs, nearly a fifth of those who joined the case. As such, Defendant cannot meet its burden to compel these individuals to arbitration. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) ("Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate."); *Barkley v. Pizza Hut of America, Inc.*, No. 14-376, 2014 WL 3908197 (M.D. FL. Aug. 11, 2014) (denying motion to compel arbitration where employer submitted declarations stating that all employees agreed to arbitrate, but failed to produce declarations signed by all plaintiffs); *Tae In Kim v. Dongbu Tour & Travel, Inc.*, 529 F. App'x 229, 234 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 826 (U.S. 2013) ("Dongbu's claim that Tae In Kim agreed to arbitrate any dispute that he might have with Dongbu is devoid of any possible merit, as the District Court plainly believed, because Dongbu wants us to require him to arbitrate his claims pursuant to an arbitration clause contained in a contract that it cannot show that he executed"); *Grant v. House of Blues New Orleans Restaurant Corp.*, No. 10-3161, 2011 WL1596207, at *5-7 (E.D. La. Apr. 27, 2011) (denying motion to compel arbitration where employer claimed to require all employees to agree to arbitrate, but could not provide a complete arbitration agreement signed by the plaintiff).

Defendant's contention that any renewed action should be limited to the five identified individuals for whom it was unable to provide any proof of arbitration agreements is not well-taken.  NPC has offered no indication that there is anything exceptional or unique about these drivers.  To the contrary, Defendant admitted that "[n]ot all delivery drivers employed by NPC

8

have entered into arbitration agreements with NPC." ECF No. 41-1 at ¶ 17. And Defendant was unable to provide a signed arbitration agreement for nearly one fifth of the Opt-In Plaintiffs. Given that NPC has employed approximately 49,930 delivery drivers during the three years prior to Plaintiff's original complaint (*id*. at ¶ 18), this sample suggests that there are approximately 10,000 drivers for whom NPC cannot produce arbitration agreements.

Even putting aside NPC's systematic refusal to proceed to arbitration with its drivers, it is clear that there are thousands of drivers whom the Unsigned Plaintiffs may seek to represent in a representative action. Representative actions seeking to raise the wage and hour claims of several thousand employees are routinely certified by federal courts. Thus, while NPC is free to raise arguments at the appropriate stage about the scope and limits of any representative action, such arguments provide no basis to conclude that it is futile for the Unsigned Plaintiffs to pursue *any* collective or class action.

**2.      The Waived Plaintiffs Must Be Allowed To Bring Their Minimum Wage Claims Before This Court.**

Beyond those delivery drivers who have never agreed to arbitrate, there are over 1,300 additional drivers whom NPC can no longer compel to arbitrate their claims, as NPC itself has already refused to participate in arbitration with them.[4] Like other contract rights, "[a] contractual right to arbitrate may be waived, either expressly or implicitly." *Grumhaus v. Comerica Sec., Inc*., 223 F.3d 648, 650 (7th Cir. 2000). In assessing waiver, courts "must determine whether 'based on all the circumstances, the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate.'" *Id.* at 650-651 (quoting *St.*

---

[4] As further explained below, given the staggering scope of NPC's refusal to arbitrate against 1,320 delivery drivers bringing the exact claims at issue, NPC has globally waived its right to arbitrate these claims.

*Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 587 (7th Cir.1992)).

Applying these basic contract principles, courts consistently hold that "[a] refusal by a party to arbitrate upon demand duly made by the other side constitutes such a waiver." *Id*; *see also See*, *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1294-95 (10th Cir. 2015) (holding that failure to pay arbitration fees qualified as a default under Section 3 of the FAA and permitting case to resume in court); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) (noting that failure to arbitrate a dispute, despite being ordered to do so by the relevant arbitral authority, constitutes default of an arbitration agreement).  And a party that is in breach of an agreement cannot seek to enforce a right to demand arbitration pursuant to that same agreement.  *See, e.g., Freeman v. SmartPay Leasing, LLC*, 771 Fed. Appx. 926 (11th Cir. 2019) ("Therefore, the district court did not err in concluding that SmartPay waived its right to compel arbitration by refusing to pay the initial filing fee"); *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) ("The Court agrees defendant materially breached the Arbitration Agreement and therefore cannot use the Agreement to compel arbitration.  To hold otherwise would set up a perverse incentive scheme, contrary to the FAA and common sense") (internal footnote and quotation omitted); *Sink v. Aden Enterprises*, 352 F.3d 1197, 1199-1200 (9th Cir. 2003) (holding that employer's failure to pay arbitration fees qualified as a default in arbitration and that the District Court was not required to compel arbitration); *Roach  v. BM Motoring, LLC*, 228 N.J. 163, 180 (N.J. 2017) ("Thus, we hold that defendants' knowing refusal to cooperate with plaintiffs' arbitration demands, filed in reasonable compliance with the parties' agreement, amounts to a material breach of the [arbitration agreement] and, as such, bars the breaching party from later compelling arbitration");

10

As the Ninth Circuit persuasively explained, "when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005). Indeed, to hold otherwise "would set up a perverse incentive scheme." *Id.* at 1012.

> Employers [] would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation.

*Id.* As the Ninth Circuit recognized, allowing such tactics runs contrary to the national policy favoring arbitration as it would only "encourage companies to refuse to participate" in arbitration. *Id.*

> [T]his case displays a dark side of our nation's policy in favor of arbitration. When a defendant in a judicial forum refuses to respond to a complaint that is properly filed and served, the court has the power to enter and enforce a default judgment. Arbitration works differently. The American Arbitration Association could not compel [the employer] to pay its share of the filing fee, and in the absence of the fee it could not proceed. [The employee] had no choice but to come to court. Many people in [the employee's] position would simply have given up. Because she did not, we have the occasion to make clear that when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate.

*Id.* at 1013.

Numerous courts have reached the same conclusion. *See, e.g.*, *Freeman*, 771 Fed. Appx. 926; *Nadeau*, 251 F. Supp. 3d at 641; *Spano v. V & J Nat'l Enterprises, LLC*, 264 F. Supp. 3d 440, 457-58 (W.D.N.Y. 2017) (holding that employer waived right to compel arbitration by failing to pay AAA filing fees); *Stanley v. A Better Way Wholesale Autos, Inc.*, 2018 WL 3872156, at *7-8 (D. Conn. Aug. 15, 2018) (same); *Rapaport v. Soffer*, No. 2:10-cv-00935-KJD-RJJ, 2011 WL 1827147, at *2-3 (D. Nev. May 12, 2011) (same); *Garcia v. Mason Contract Prods.*, LLC, No. 08- 23103-CIV, 2010 WL 3259922, at *1-2 (S.D. Fla. Aug. 18, 2010) (same).

11

Because Defendant refused to participate in arbitration, it has completely foreclosed its ability to enforce arbitration.  As referenced above, the AAA is now refusing to administer any arbitrations with Defendant.  Thus, all of the arbitration agreements Defendant forced drivers to sign, which were identical in nature and called for the AAA to administer and its rules to apply, are unenforceable across the entire class of drivers.  Any argument by Defendant that it will arbitrate any future claim or additional driver claim is disingenuous at best.

As with adding the Unsigned Plaintiffs, Plaintiffs' proposed amendments to add the Waived Plaintiffs is plainly not futile.

### B.      Plaintiffs' Motion Is Not Made In Bad Faith.

The question of bad faith requires a court to focus on the plaintiff's motives for amending the complaint.  Even delay, standing alone, does not constitute bad faith.  *See S.E.C. v. DCI Telecomm., Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (no bad faith absent a "showing of malice").  A proposed amendment is not in bad faith when it comes while discovery is ongoing -- or, as here, has not even properly begun -- "and relies on the same facts" set forth in the original complaint.  *See Fastiggi v. Waterview Hills Nursing Ctr., Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998).

Plaintiffs move for leave to amend in good faith based on NPC's own inability to produce arbitration agreements for all Opt-In Plaintiffs -- despite Plaintiffs consenting to numerous extensions of time to do so -- and its willful decision to refuse to participate in arbitration against the Waived Plaintiffs and well over a thousand of their peers which has caused the arbitration company specified in the arbitration agreements to refuse to administer any further arbitrations.

The proposed consolidated amendment complaint relies on the same nucleus of facts set forth in all prior versions of the complaint.  *See Fastiggi*, 6 F. Supp. 2d at 243.  These facts are, and always have been, that delivery drivers employed by NPC were universally under-

12

reimbursed for their automotive expenses, and that this systemic under-reimbursement pushed

their effective wages below the legal minimum -- facts that put NPC on notice of its liability

under all of the state law claims Plaintiffs seek to bring in the proposed amended complaint. *See*

*Ruggles v. Wellpoint, Inc.*, 687 F.Supp.2d 30, 35 (N.D.N.Y.2009) ("Plaintiffs' FLSA claim

already includes opt-in plaintiffs from California and Illinois and, as such, even without the

addition of Plaintiffs' proposed state-law claims, Defendant will have to defend against the

allegation that they failed to pay overtime to employees working in California and

Illinois.  Defendant was or should have been put on notice of its potential liability under

California and Illinois state laws at the time consent forms were filed by workers in those

states.").  Accordingly, Defendant cannot show any bad faith by Plaintiffs in seeking to amend

the operative complaint at this time.

> **C.     Plaintiffs Were Diligent In Seeking To
>         Amend And There Was No Undue Delay.**

Plaintiffs have been diligent in pursuing their rights, including in bringing this motion for

leave to amend.  The Unsigned Plaintiffs repeatedly requested that Defendant provide arbitration

agreements that would apply to them, and when Defendant repeatedly requested more time in

which to do so, Plaintiffs only agreed based on Defendant's agreement to toll all applicable

statutes of limitations.  Defendant should not be heard to complain of any delay or supposed lack

of diligence when the delays were the result of its own requests for more time to locate

arbitration agreements (which it was ultimately unable to do for nearly a fifth of the Opt-In

Plaintiffs).

Furthermore, as to the Waived Plaintiffs, NPC conclusively breached its obligation to

arbitrate when it failed to submit payment <u>today</u>.  There has clearly been no undue delay or lack

of diligence in seeking to amend to bring claims based on this extremely recent development.

### D.   Defendant Will Not Suffer Undue Prejudice As A Result Of Plaintiffs' Proposed Amendments.

Plaintiffs' proposed amendments to the operative complaint do not unduly prejudice Defendant.  While "[v]irtually all amendments result in some degree of prejudice to an opposing party due to the potential for additional discovery and trial delay" (*Luckett v. Conlan*, 561 F. Supp. 2d 970, 977 (N.D. Ill. 2008) (citing *Ameritech Corp. v. Computer Sys. Solutions, Inc.,* No. 97–C–7932, 1999 U.S. Dist. LEXIS 6743, at \*6–7 (N.D. Ill. Apr.26, 1999))), undue prejudice usually occurs only when amendments raise "entirely new and separate claims, add[] new parties, or at least entail[] more than an alternative claim or a change in the allegations of the complaint." *Ameritech Corp.*, 1999 U.S. Dist. LEXIS 6743 (quoting *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385 (N.D.Ill.1975)).  As described above, the claims of the proposed amended complaint are based on the same core facts as in the original complaint, and the scope of the original claims clearly put Defendant on notice that it could be liable under the state law claims found in the proposed amendments.  *See Ruggles*, 687 F. Supp. 2d at 35.

Defendant has been on notice of Plaintiffs' longstanding request for signed arbitration agreements for all the Opt-In Plaintiffs, and of the implication that Plaintiffs would pursue these claims in court if they were not produced.  Moreover, the inclusion of additional Plaintiffs against whom NPC has waived its arbitration defense is the direct result of NPC's own willful refusal to arbitrate those claims when they were duly initiated before the AAA.  Defendant should not be heard to complain of undue prejudice from claims that are being brought in this forum because of its own breach of these arbitration agreements.

NPC is in a particularly poor position to claim prejudice given that the Amended Complaint represents the first complaint under which the Waived Plaintiffs are attempting to

14

participate in this action.  Therefore, if the motion for leave to amend were denied, the Waived

Plaintiffs -- who are not yet parties to this action -- would have every right to file an original

complaint in this or another court.  Stated differently, the Waived Plaintiffs do not actually need

leave to file a complaint against NPC; they have simply sought to be added to the amended

complaint to promote judicial economy.  NPC cannot claim prejudice based solely on the manner

in which the Waived Plaintiffs have styled the <u>first</u> complaint they have filed in any court against

NPC.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to

amend the operative complaint as detailed in the proposed amended complaint, submitted to the

Court and all counsel of record in accordance with S.D. Ill. Local Rule 15.1, and allow this long-

delayed litigation to continue now that NPC has both failed to produce arbitration agreements

and refused to arbitrate over 1,300 claims.


Dated:          August 1, 2019                              Respectfully submitted,

                                                            */s/ Jeremiah Frei-Pearson*
                                                            Jeremiah Frei-Pearson
                                                            (*Pro Hac Vice*)
                                                            **FINKELSTEIN, BLANKINSHIP,
                                                            FREI-PEARSON & GARBER, LLP**
                                                            Todd S. Garber
                                                            (*Pro Hac Vice*)
                                                            Chantal Khalil
                                                            (*Pro Hac Vice*)
                                                            Andrew C. White
                                                            (*Pro Hac Vice* application forthcoming)
                                                            445 Hamilton Avenue, Suite 605
                                                            White Plains, New York 10601
                                                            Telephone: (914) 298-3281
                                                            Facsimile:  (914) 824-1561

**MORGAN & MORGAN, P.A.**
C. Ryan Morgan
(*Pro Hac Vice*)
Michael Marrese
(*Pro Hac Vice* application forthcoming)
20 North Orange Avenue, 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:  (407) 420-1414
Facsimile:   (407) 245-3401

**KELLER LENKNER LLC**
Ashley Keller (*pro hac vice forthcoming*)
   ack@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
   mpr@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5200

Warren Postman (*pro hac vice forthcoming*)
   wdp@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiffs*
*and the Putative Classes*